Juli E. Farris (SBN 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497

*Attorney for Plaintiff*

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ALYSHA NOBLE, on behalf of herself and as parent and guardian of her minor child, R.J.S., and on behalf of all others similarly situated,

Plaintiff,

v.

POWERSCHOOL HOLDINGS, INC. and POWERSCHOOL GROUP LLC,

Defendants.

No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Alysha Noble ("Plaintiff"), individually and as a parent and guardian of her minor child, R.J.S., and on behalf of all persons similarly situated, brings this Class Action Complaint against Defendants PowerSchool Holdings, Inc. and PowerSchool Group LLC ("Defendants" or "PowerSchool"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names. These consequences are particularly attenuated for minor victims because the misuse of their Private Information can have long-lasting negative consequences throughout their lives.[2]

2. Plaintiff brings this action against PowerSchool on behalf of the victims of a targeted cyberattack on PowerSchool. Plaintiff's and Class Members' most sensitive personally identifiable information ("PII[3]") and/or protected health information ("PHI[4]") (collectively, "Private

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall,* S.C. Lawyer (May 2014).

[2] Steve Yin, *Protecting Children's Data Needs to Be a Priority for All*, DarkReading (Jan. 25, 2024), https://www.darkreading.com/cyberattacks-data-breaches/protecting-childrens-data-needs-priority-for-all.

[3] PII is information that can be used to distinguish or trace an individual's identity and can include an individual's name, Social Security number, driver's license number, phone number, financial information, and other identifying information unique to an individual. *See* 2 C.F.R. § 200.79.

[4] Under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*, PHI is considered to be individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-

Information")—including, but not limited to, dates of birth, addresses, phone numbers, email addresses, Social Security numbers, grade information, and medical information—was compromised and exfiltrated by cybercriminals at some time between December 19 and December 28, 2024 ("the Data Breach").

3. The Data Breach appears to be the largest breach of American children's Private Information to date, according to cybersecurity experts and school officials.[5]

4. PowerSchool is a leading provider of cloud-based software to K-12 educational institutions.[6] PowerSchool's software is used by over 18,000 customers to support more than 60 million students across North America.[7]

5. PowerSchool's products are mainly used by school districts, schools, educators, and families throughout the country to maintain records for students in grades K-12. PowerSchool provides a range of services for its customers, including tracking students' learning (enrollment, attendance, and grades, among other areas), progress monitoring for teachers, data visualization and reporting for school districts, financial and analytic products, staff professional development, and communication services.[8]

6. Because of the nature of its business, PowerSchool receives, handles, and maintains the Private Information of millions of students, parents, and faculty throughout the country. On information

covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. *See also* 45 C.F.R. § 160.103. Health information such as diagnoses, treatment information, medical test results, and prescription information are considered PHI under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information.). *See also Summary of the HIPAA Privacy Rule*, U.S. Dep't of Health & Human Servs. (2003), https://www.hhs.gov/sites/default/files/privacysummary.pdf.

[5] Kevin Collier, *Children's data hacked after school software firm missed basic security step, internal report says*, NBC News (Jan. 31, 2025), https://www.nbcnews.com/tech/security/powerschool-hack-data-breach-protect-student-school-teacher-safe-rcna189029.

[6] *About*, PowerSchool, https://www.powerschool.com/company/ (last accessed on Jan. 31, 2025).

[7] Carly Page, *PowerSchool says hackers stole students' sensitive data, including Social Security numbers, in data breach*, TechCrunch (Jan. 9, 2025), https://techcrunch.com/2025/01/09/powerschool-says-hackers-stole-students-sensitive-data-including-social-security-numbers-in-data-breach/.

[8] *PowerSchool Services*, PowerSchool, https://www.powerschool.com/services/ (last accessed on Jan. 31, 2025).

and belief, the Private Information of PowerSchool's customers—including the Private Information of students, parents, and faculty—is contained and stored in PowerSchool's databases and systems.

7. Despite maintaining the Private Information of tens of millions of individuals—the majority of whom are minors—PowerSchool failed to implement adequate data security practices. PowerSchool stored the Private Information of its end users in inadequately encrypted or unencrypted formats online that failed to support multi-factor authentication, allowing cybercriminals to wrongfully access and exfiltrate Plaintiff and Class Members' Private Information.

8. At some time between December 19 and December 28, 2024, cybercriminals breached PowerSchool's systems and exfiltrated the Private Information stored therein of tens of millions of individuals.

9. On December 28, 2024, PowerSchool first became aware of the Data Breach.

10. Days later, on or around January 7, 2025, PowerSchool started notifying impacted customers, including public and private school districts throughout the United States. But, as of this filing, PowerSchool has not directly notified Plaintiff or many other Class Members about the Data Breach.

11. By acquiring, utilizing, and benefitting from Plaintiff's and Class Members' Private Information as part of its business, PowerSchool owed or assumed common law, contractual, and statutory duties extending to Plaintiff and Class Members. Such duties required PowerSchool to design and implement adequate data security measures to safeguard Plaintiff's and Class Members' Private Information and keep their Private Information confidential, secure, and protected from authorized access.

12. PowerSchool breached these duties by failing to implement adequate data security systems to sufficiently safeguard and protect Plaintiff's and Class Members' sensitive Private Information, resulting in the Data Breach.

13. Because of the Data Breach, through which their Private Information was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft, for a period of years, if not decades. Plaintiff and Class Members must now and in the future closely monitor their financial and other accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and Class Members will incur ongoing out-of-pocket costs, such as for purchasing credit monitoring services, placing credit freezes, obtaining credit reports, or taking other protective measures to deter and detect identity theft.

14. Plaintiff, on behalf of herself, her minor daughter, R.J.S., and all similarly situated individuals whose Private Information was accessed and exfiltrated during the Data Breach, brings claims against PowerSchool for negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory judgment, seeking actual and putative damages, attorneys' fees, costs, expenses, and appropriate injunctive and declaratory relief.

## II. PARTIES

15. Plaintiff Alysha Noble and her minor child R.J.S. are residents and citizens of Maryland, where they intend to remain.

16. Defendant PowerSchool Holdings, Inc. is a Delaware corporation with its principal place of business at 150 Parkshore Drive, Folsom, California 95630.

17. Defendant PowerSchool Group LLC is a Delaware limited liability company with its principal place of business at 150 Parkshore Drive, Folsom, California 95630.

18. Defendant PowerSchool Group LLC is a subsidiary company of Defendant PowerSchool Holdings, Inc.

## III. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of

2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists under 28 U.S.C. § 1332(d)(2), because Plaintiff is a citizen of a state different from Defendants.

20. This Court has personal jurisdiction over Defendants because their headquarters and principal place of business are located in this District. Defendants conduct substantial business and have minimum contacts with the State of California.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District, and the acts or omissions giving rise to Plaintiff's claims took place in this District.

## IV. FACTUAL ALLEGATIONS

### A. PowerSchool Collects, Stores, and Profits from its Customers' Data, and Promises to Keep It Secure.

22. As noted above, PowerSchool is a leading provider of cloud-based education software for K-12 education in North America.

23. PowerSchool boasts of its powerful student information system, PowerSchool SIS, that allows schools to manage their operations remotely. PowerSchool SIS reportedly allows schools to collect student information in a secure, cloud-based environment, designed for maintaining records on attendance, course assignments, demographics, enrollment, family management, fees, health & immunizations, report cards, report cards, and test history, among other records.[9]

24. But to take advantage of PowerSchool SIS, its customers must provide PowerSchool with sensitive student, parent, and teacher Private Information, including, but not limited to, individuals' names, Social Security numbers, addresses, medical information, and school and grade information.

25. This Private Information includes PHI, which is considered "the most confidential and

[9] *Explore All PowerSchool SIS Has to Offer*, PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/features/ (last accessed Jan. 31, 2025).

valuable type of [PII] . . . irrevocable once breached."[10]

26. PowerSchool profits substantially from the receipt of this vast amount of Private Information because, without it, PowerSchool could not provide PowerSchool SIS to its customers.

27. PowerSchool maintains that it "ensure[s] data security," asserting that its "security and compliance experts help keep data safe and accessible."[11] Further, "PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers."[12]

28. In support of its commitments, PowerSchool has publicly touted its data security and cybersecurity abilities, including that PowerSchool "leverage[es] various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications."[13] Specifically, PowerSchool says:

> PowerSchool employs a variety of physical, administrative, and technological safeguards designed to protect your data against loss, misuse, and unauthorized access or disclosure. We strive to continuously maintain reasonable physical, administrative, and technical security measures. Our security measures consider the type and sensitivity of the data being collected, used, and stored, and the current state of technology and threats to data. PowerSchool independently verifies its security management system to the internationally recognized standard for security management and holds ISO 27001 and SOC2 certifications. PowerSchool also endeavors to align its privacy and security operations to best practices and relevant international regulations.[14]

29. Plaintiff, her minor child, R.J.S., and Class Members entrusted PowerSchool with their sensitive Private Information, as did the educational institutions and school districts who entered into contractual agreements with PowerSchool. Plaintiff and Class Members relied on PowerSchool to keep

---

[10] Junyuan Ke, et al., *My Data or My Health? Heterogenous Patient Responses to Healthcare Data Breach*, SSRN, 7 (Feb. 10, 2022), https://ssrn.com/abstract=4029103.

[11] *PowerSchool SIS*, PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/ (last accessed Jan. 31, 2025).

[12] *PowerSchool's Privacy Principles*, PowerSchool, https://www.powerschool.com/privacy/ (last accessed Jan. 31, 2025).

[13] *Id.*

[14] *Id.*

their Private Information secure and safeguarded against unauthorized access and disclosure to unauthorized persons. PowerSchool owed a duty to Plaintiff and Class Members to secure their Private Information and ultimately breached that duty, as Plaintiff's and Class Members' Private Information was compromised, unlawfully accessed, and exfiltrated due to the Data Breach.

**B. The PowerSchool Data Breach.**

30. Despite its promises, PowerSchool and its employees failed to properly monitor the computer network and systems in which the Private Information of Plaintiff and Class Members was maintained, and PowerSchool failed to detect and stop the Data Breach. Had PowerSchool properly monitored its systems and employed appropriate security measures commensurate with the sensitivity of the Private Information, it would have either discovered the intrusion sooner or been able to prevent it entirely.

31. According to news reports, on or about December 28, 2024, PowerSchool first became aware of the Data Breach after PowerSchool SIS customer information was stolen through its PowerSource customer support platform.[15]

32. A notification sent by PowerSchool to one of its customers reads: "As a main point of contact for your school district, we are reaching out to make you aware that on December 28, 2024 PowerSchool became aware of a potential cybersecurity incident involving unauthorized access to certain information through one of our community-focused customer support portals, PowerSource."[16]

33. PowerSchool confirmed that the cybercriminal stole a trove of sensitive Private Information, including individuals' names, addresses, Social Security numbers, medical information, grade information, and "other unspecified personally identifiable information belonging to students and

---

[15] Lawrence Abrams, *PowerSchool hack exposes student, teacher data from K-12 districts*, BleepingComputer (Jan. 7, 2025), https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/.

[16] *Id.*

teachers."[17]

34. PowerSchool also negotiated with the cybercriminals and paid a sum to prevent the publication of the exfiltrated Private Information, though PowerSchool has declined to provide any evidence suggesting that the stolen Private Information has been deleted.[18]

35. On or about January 7, 2025, PowerSchool claims it sent a cybersecurity incident notification to its customers about the Data Breach.[19]

36. Plaintiff never received such a notification.

37. According to news reports, the threat actor responsible for the Data Breach claimed to have stolen the data of 6,505 school districts in the U.S., Canada, and other countries.[20] These reports say that the Data Breach impacted over 62 million students and over 9.5 million teachers.[21]

38. To date, PowerSchool has declined to disclose how many individuals were impacted by the Data Breach.

39. On January 29, 2025, in an update published to their website, PowerSchool represented that it has begun to distribute direct email notifications to individuals impacted by the Data Breach.[22] PowerSchool has also begun the process of filing regulatory notifications with Attorneys General offices across the United States and has started notifying Canadian regulators.[23]

40. Upon investigation, PowerSchool determined that a threat actor gained access to PowerSchool's system using compromised credentials and then improperly accessed and exfiltrated

---

[17] Page, *supra* note 7.
[18] *Id.*
[19] Abrams, *supra* note 15.
[20] Lawrence Abrams, *PowerSchool hackers claims they stole data of 62 million students*, BleepingComputer (Jan. 22, 2025), https://www.bleepingcomputer.com/news/security/powerschool-hacker-claims-they-stole-data-of-62-million-students/.
[21] *Id.*
[22] *Identity and Credit Monitoring Update for United States Customers*, PowerSchool, https://www.powerschool.com/security/sis-incident/ (last accessed Jan. 31, 2025).
[23] *Id.*

Private Information using an "export data manager" customer support tool.[24]

41. Compromised credentials account for almost two-thirds of all data breaches. Compromised credentials occur when unauthorized users acquire valid login information for an individual's legitimate online account. Common causes include recycling old passwords across various websites, failing to regularly update passwords, or using passwords that are easily compromised.

42. Entities can protect themselves from threat actors gaining unauthorized access via compromised credentials through the use of multi-factor-authentication ("MFA"), which can provide further security by requiring more than a username and password to gain entry to a user's account.

43. MFA is an industry-wide best practice. Ofer Maor, co-founder at cloud incident response firm Mitiga, says that "MFA is a critical component in protecting against identity theft, and specifically against attacks related to the successful theft of passwords through phishing, malware (infostealers), or leakage of reused passwords from compromised sites."[25]

44. PowerSchool failed to implement MFA, despite its widespread use as a core component of digital security. According to news reports, a PowerSchool executive "admitted that the hackers were able to access and download the student records by logging into one account that didn't have two-factor authentication enabled, one of the most basic cybersecurity standards for any account."[26]

45. Because of PowerSchool's data security failures, the Data Breach has compromised the Private Information of tens of millions of individuals, including Plaintiff, her child, and Class Members.

**C. PowerSchool Failed to Comply with Regulatory Guidance and Industry-Standard Cybersecurity Practices.**

46. PowerSchool's failure to properly safeguard its customers' data is attributable to its

[24] Abrams, *supra* note 15.

[25] Shane Snider, *PowerSchool's Lack of MFA Control Leaves Companies Vulnerable*, *Experts Say*, Information Week (June 5, 2024), https://www.informationweek.com/cyber-resilience/PowerSchool-s-lack-of-mfa-control-leaves-companies-vulnerable-experts-say (last accessed Jan. 31, 2025).

[26] Collier, *supra* note 5.

failure to comply with state and federal laws and requirements as well as industry standards governing the protection of Private Information.

47. Federal and state regulators have set forth security standards and issued recommendations to prevent data breaches. As such, there are various state and federal laws, requirements, and industry standards governing the protection of Private Information.

48. For example, at least 20 states have enacted laws addressing data security practices requiring businesses that own, license, or maintain Private Information to implement and maintain reasonable security procedures and practices and to protect Private Information from unauthorized access.

49. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses, highlighting the importance of adhering to reasonable data security practices.

50. PowerSchool failed to comply with FTC guidance on protecting Private Information and failed to follow industry-standard cybersecurity practices. Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect Private Information by companies like PowerSchool. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data.

51. The FTC recommends:

- limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files to provide better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;

- monitoring both in- and out-bound transfers of information for indications of compromise, such as unexpectedly large amounts of data being transmitted to unknown users; and
- monitoring activity logs for signs of unauthorized access to customer information.[27]

52. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.[28]

53. In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for businesses.[29] The guidelines note that businesses should protect the personal customer information that they keep; properly delete Private Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

54. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require that strong passwords be used by employees with access to sensitive customer information; apply security

---

[27] Fed. Trade Comm'n, *Financial Institutions and Customer Information: Complying with the Safeguards Rule* (Apr. 2006), https://web.archive.org/web/20220305192257/http://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last accessed Jan. 31, 2025).

[28] Fed. Trade Comm'n, *Start With Security: A Guide for Business*, (June 2015), http://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Jan. 31, 2025).

[29] Fed. Trade Comm'n, *Protecting PII: A Guide for Business* (Oct. 2016), http://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Jan. 31, 2025).

measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

55. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures that businesses must take to meet their data security obligations.

56. The FTC has also interpreted Section 5 of the FTC Act to apply to failures to appropriately store and maintain personal data.

57. PowerSchool was aware of its obligations to protect the Private Information stored on its networks, yet failed to take reasonable steps to comply with such obligations. PowerSchool was also aware of the significant repercussions if it failed to do so because its customers' data stored in PowerSchool's systems contained Private Information from millions of consumers; PowerSchool knew that this Private Information, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

58. PowerSchool's (1) failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential and personal consumer data, and (2) failure to verify that it had implemented reasonable security measures constitute unfair acts or practices prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

59. Further, various cybersecurity industry best practices have been published and should be consulted when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") established its Critical Security Controls ("CIS controls") that identify the most common cyber-

attacks that impact businesses and offers solutions to defend against such attacks.[30] All organizations collecting and handling Private Information, including PowerSchool, are strongly encouraged to follow the CIS controls.

60. Certain best practices that should be implemented by data management companies such as PowerSchool include, but are not limited to: (1) securely configuring business software; (2) managing access controls; (3) conducting continuous vulnerability management to networks, systems, and software; (4) maintaining network infrastructure; (5) providing network monitoring and defense; and (6) encrypting data.[31]

61. PowerSchool failed to follow these and other industry standards to properly protect Plaintiff's and Class Members' sensitive Private Information.

**D. The Effect of the Data Breach on Plaintiff and Class Members.**

62. PowerSchool's failure to keep Plaintiff's and Class Members' Private Information secure has severe ongoing ramifications. Given the sensitive nature of the Private Information stolen in the Data Breach, hackers can commit identity theft, financial fraud, medical fraud, and/or other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff and Class Members have suffered injury and face an imminent and substantial risk of further injury, including identity theft and related cybercrimes, due to the Data Breach.

63. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[32] "Identifying information" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[33]

---

[30] Center for Internet Security, *CIS Critical Security Controls* (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last accessed Jan. 31, 2025).
[31] *Id.*
[32] 17 C.F.R. § 248.201(9).
[33] 17 C.F.R. § 248.201(8).

64. Identity thieves can use Private Information to commit a variety of crimes that harm victims, including obtaining a driver's license or identification card in the victim's name; using the victim's Private Information to obtain government benefits; filing a fraudulent tax return using the victim's Private Information to obtain a fraudulent refund; or immigration fraud.

65. Merely reimbursing a victim for financial loss because of fraud does not make them whole. Conversely, identity theft victims have to spend many hours, and their own money, repairing their credit. For example, the Department of Justice determined that, in 2014, identity theft victims "reported spending an average of about 7 hours clearing up the issues" related to fraud.[34]

66. Identity theft takes an emotional toll on its victims. According to a 2017 survey from the Identity Theft Resource Center, 75% of respondents expressed that they were severely distressed over the misuse or attempted misuse of their Private Information.[35] Identity theft victim respondents reported the following forms of emotional suffering: (i) 67% reported anxiety; (ii) 66% reported fear regarding their personal financial security; (iii) 44% reported the loss of ability to trust; (iv) 37% reported fear for financial security of family members; (v) 24% reported fear for their personal safety; and (vi) 7% reported feeling suicidal.[36]

67. There are also often strong physical reactions associated with identity theft. In the same survey, respondents reported the following physician reactions: (i) 64% reported stress; (ii) 48% reported sleep disturbances; (iii) 37% reported an inability to concentrate or a lack of focus; (iv) 28% reported an inability to go to work because of these physician symptoms; and (v) 23% reported new physical illnesses (including aches and pains, heart palpitations, sweating, and stomach issues).[37]

---

[34] Bureau of Justice Statistics, *Victims of Identity Theft, 2014* at 10, U.S. Dep't of Just. (Nov. 13, 2017), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last accessed Jan. 31, 2025).

[35] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017* at 10 (2017), https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last accessed Jan. 31, 2025).

[36] *Id.* at 11.

[37] *Id.* at 12.

68. Further, malicious actors often wait months or years to use the Private Information obtained in data breaches, as victims often become less diligent in monitoring their accounts after a significant period of time has passed. These bad actors will also re-use stolen Private Information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach.

69. The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[38] Moreover, there is often significant time between when a person suffers harm due to theft of their Private Information and when they discover the harm. Plaintiff and Class Members will therefore need to spend time and money to continuously monitor their accounts for years to ensure their Private Information obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services they must purchase now, and in the future, to ameliorate the risk of harm they face due to the Data Breach.

70. Plaintiff and Class Members now, and in the future, must confront constant surveillance and monitoring of their financial and personal records. Plaintiff and Class Members incur and will continue to incur such damages, in addition to any fraudulent use of their Private Information and any emotional and/or physical suffering stemming therefrom.

**E. The PowerSchool Data Breach Injured Plaintiff and Class Members.**

71. As a direct and proximate result of PowerSchool's wrongful conduct and the Data

---

[38] U.S. Gov't Accountability Off., *GAO-07-737, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 4, 2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last accessed Jan. 31, 2025).

Breach, Plaintiff and Class Members have been harmed by the fraudulent use of their Private Information and have been placed at an increased risk of additional harm from identity theft and identity fraud, requiring time and money to mitigate the actual and potential impact of the Data Breach. Such mitigation efforts include, among others, placing "credit freezes" and "credit alerts" with reporting agencies, contacting financial institutions (and resulting closure or modification of related financial accounts), reviewing and monitoring credit reports and accounts for any unauthorized activity, and closely reviewing phishing and/or spam communications now and for years to come.

72. PowerSchool's wrongful conduct directly and proximately caused the theft of Plaintiff's and Class Members' Private Information, leading to the following damages for which they are entitled to compensation: (i) theft and misuse of their Private Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Private Information; (iii) loss of value of their Private Information, for which there is an established market; (iv) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (v) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach, including finding fraudulent charges, canceling and reissuing cards, purchasing credit monitoring and identity theft protection services, and the inconvenience and annoyance of confronting all such issues stemming from the Data Breach; and (vi) nominal damages.

73. Plaintiff and Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages) that protects them from suffering further harm, as their Private Information remains in PowerSchool's possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

**F. Plaintiff Noble's Experience.**

74. Plaintiff Alysha Noble is the parent of a twelve-year-old student, R.J.S.

75. R.J.S. is a sixth grade student at Broadford Elementary School in Oakland, Maryland. Her school is a part of the Garrett County Public Schools school district.

76. On information and belief, educational institutions within the Garrett County Public School district use PowerSchool SIS as a digital tool for students, parents, and teachers.

77. As a condition of R.J.S. attending Broadford Elementary School, Plaintiff and R.J.S. were required to provide their Private Information to PowerSchool, including name, date of birth, contact information, Social Security number, and/or other sensitive information.

78. At the time of the Data Breach, PowerSchool retained Plaintiff and R.J.S.'s Private Information in its system.

79. At all times, Plaintiff expected the Private Information Plaintiff and R.J.S. provided to PowerSchool would be kept confidential.

80. Beginning in or around November 2024, Plaintiff experienced a sudden, unprecedented influx of spam email messages received at the email address associated with her PowerSchool account.

81. Beginning in or around December 2024, Plaintiff began to encounter difficulties when attempting to login to the PowerSchool account for R.J.S.'s school. In each of those instances, Plaintiff was unable to gain access to the PowerSchool account and had to request access codes directly from Broadford Elementary School. These access issues have been ongoing.

82. Based on publicly-available information provided by PowerSchool, impacted school districts had the Private Information of students, parents, and teachers improperly accessed and exfiltrated by cybercriminals in the Data Breach. This Private Information included student Social Security numbers, grades, medical information, and "other unspecified personally identifiable information belonging to students and teachers."[39]

83. On information and belief, Plaintiff and/or R.J.S.'s Private Information was improperly

[39] Page, *supra* note 7.

accessed and exfiltrated by unauthorized third parties, including, but not limited to, R.J.S.'s name, Social Security number, grades, and medical information.

84. Plaintiff has not yet received any notification about the Data Breach, either from Broadford Elementary School or from PowerSchool directly.

85. Since the Data Breach, Plaintiff has spent numerous hours taking action to mitigate the impact of the Data Breach, including but not limited to calling R.J.S.'s school and monitoring her and R.J.S.'s accounts for fraudulent activity.

86. Because of the Data Breach, Plaintiff has suffered numerous, substantial injuries, including, but not limited to: (1) theft of her and her child's Private Information; (2) invasion of privacy; (3) lost or diminished value of Private Information; (4) lost time associated with attempting to mitigate the consequences of the Data Breach; and (5) imminent and impending injury arising from the increased risk of fraud and identity theft.

87. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud as well as other risks of harm on account of the Private Information disclosed in the Data Breach for years to come. For instance, Plaintiff will need to monitor R.J.S.'s credit for fraud attempts while she remains a minor, and R.J.S. will need to continue to monitor her credit for potential fraud and identity theft into adulthood. Plaintiff therefore anticipates spending considerable time and money on an ongoing basis to attempt to mitigate and address the harms caused by the Data Breach.

88. Plaintiff has a continuing interest in ensuring that her and her child's Private Information—which, on information and belief, remains in PowerSchool's possession—is protected and safeguarded from future data breaches.

## V. CLASS ACTION ALLEGATIONS

89. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks

certification of the following nationwide class (the "Class"):

> **All natural persons residing in the United States whose Private Information was exfiltrated by an unauthorized party as a result of the Data Breach.**

90. The Class asserts claims against Defendants for negligence (Count One), negligence per se (Count Two), breach of implied contract (Count Three), unjust enrichment (Count Four), and declaratory judgment (Count Five).

91. Excluded from the Class are PowerSchool; PowerSchool's officers, directors, legal representatives, successors, subsidiaries, and assigns; any entity in which PowerSchool has a controlling interest; and all individuals who make a timely election to be excluded from this proceeding using the proper opt out protocol. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

92. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff and Class Members can prove the elements of their claims regarding liability and entitlement to injunctive relief and damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

93. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

94. **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members in a single proceeding is impracticable. While the exact number of Class Members is unknown at this time, as noted above, it has been reported that millions of individuals' information was compromised in the Data Breach. The precise size of the Class and the identities of all Class Members are identifiable through PowerSchool's records, including but not limited to the files implicated in the Data Breach.

95. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions

affecting individual Class Members. These common questions include:

a. Whether PowerSchool engaged in the conduct alleged herein;

b. Whether PowerSchool failed to timely notify Plaintiff, her minor child, and Class Members of the Data Breach;

c. Whether PowerSchool had a duty to protect Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

d. Whether PowerSchool failed to take reasonable and prudent security measures to ensure its systems were protected;

e. Whether PowerSchool's computer and data storage systems, which were used to protect Plaintiff's and Class Members' Private Information, violated the FTC Act and/or PowerSchool's other duties discussed herein;

f. Whether PowerSchool knew or should have known that its computer and data storage systems were vulnerable to compromise;

g. Whether PowerSchool's security measures to protect its systems were reasonable in light of known legal and regulatory requirements;

h. Whether PowerSchool adequately addressed and fixed its cybersecurity vulnerabilities that led to the Data Breach;

i. Whether PowerSchool unlawfully disclosed Plaintiff's and Class Members' Private Information;

j. Whether Plaintiff and Class Members were injured and suffered damages or other losses because of PowerSchool's failure to reasonably protect their Private Information;

k. Whether PowerSchool failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' Private Information;

l. Whether PowerSchool breached duties to adequately protect Plaintiff's and Class Members' Private Information;

m. Whether PowerSchool's conduct resulted in or was the proximate cause of the loss of the Private Information of Plaintiff and Class Members;

n. Whether PowerSchool was negligent in failing to implement reasonable and adequate security procedures and practices;

o. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages or other relief, and the measure of such damages and relief;

p. Whether Plaintiff and Class Members are entitled to additional credit and/or identity theft monitoring; and

q. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief.

96. PowerSchool engaged in a common course of conduct giving rise to the claims advanced by Plaintiff on behalf of themself and all other Class Members. Individual questions, if any, are outnumbered by the overwhelmingly numerous common questions presented here.

97. **Typicality: Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class Members' claims because Plaintiff and Class Members were subjected to the same allegedly unlawful conduct and harmed in the same way. On information and belief, Plaintiff's Private Information was in PowerSchool's possession at the time of the Data Breach and was compromised as a result of the Data Breach. Plaintiff's damages and injuries are akin to those of other Class Members, and Plaintiff seeks relief consistent with the relief of the Class.

98. **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against PowerSchool to obtain relief for the Class. Plaintiff has no conflict of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

99. **Predominance and Superiority: Federal Rule of Civil Procedure 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation also predominate over individual issues because those issues discussed in the above paragraph on commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small

compared to the burden and expense required to individually litigate their claims against PowerSchool, and thus individual litigation to redress PowerSchool's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

100. **Risk of Prosecuting Separate Actions.** This case is appropriate for certification because prosecuting separate actions by individual proposed Class Members would create the risk of inconsistent adjudications and incompatible standards of conduct for PowerSchool or would be dispositive of the interests of members of the proposed Class.

101. **Ascertainability.** The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. Membership can be determined using PowerSchool's records and/or information compromised in the Data Breach.

102. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). PowerSchool, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive relief appropriate to the Class as a whole. Injunctive relief is necessary to uniformly protect the Class Members' data. Plaintiff seeks prospective injunctive relief as a wholly separate remedy from any monetary relief.

103. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (i) whether PowerSchool owed a legal duty to Plaintiff and Class Members to exercise due care in preventing unauthorized access to PowerSchool's systems; (ii) whether PowerSchool failed to

adequately monitor its data security systems; and (iii) whether PowerSchool failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

## VI. CLAIMS FOR RELIEF

### COUNT ONE — NEGLIGENCE

104. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

105. PowerSchool knew of the sensitive nature of Plaintiff's and Class Members' Private Information, along with the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully accessed and disclosed.

106. PowerSchool knew or reasonably should have known that the failure to exercise due care in storing Plaintiff's and Class Members' Private Information created an unreasonable risk of harm.

107. PowerSchool owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing PowerSchool's data security systems to ensure that Plaintiff's and Class Members' Private Information in PowerSchool's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

108. PowerSchool's duty to use to use reasonable care arose from several sources, including but not limited to those described herein.

109. PowerSchool had common law duties to prevent foreseeable harm to Plaintiff and the Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and

probable victims of any inadequate security practices. Not only was it foreseeable that Plaintiff and Class Members would be harmed by PowerSchool's failure to protect their Private Information, because cybercriminals routinely attempt to steal such information and use it for nefarious purposes, but PowerSchool also knew that it was more likely than not that Plaintiff and other Class Members would be harmed if it allowed such a breach.

110. PowerSchool's duty also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Private Information by companies such as PowerSchool. Various FTC publications and data security breach orders further form the basis of PowerSchool's duty.

111. PowerSchool breached the duties owed to Plaintiff and Class Members and thus was negligent. PowerSchool breached these duties by, *inter alia*, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Private Information of Plaintiff and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations regarding protecting the Private Information at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff's and the Class Members' Private Information in PowerSchool's possession had been, or was reasonably believed to have been, stolen or otherwise compromised.

112. But for PowerSchool's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

113. PowerSchool's failure to take proper security measures to protect the sensitive Private Information of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff's and Class Members' Private Information.

114. Plaintiff and Class Members were foreseeable victims of PowerSchool's inadequate data security practices.

115. As a direct and proximate result of PowerSchool's negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: (i) ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (ii) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (iii) loss of the value of their privacy and the confidentiality of the stolen Private Information; (iv) illegal sale of the compromised Private Information on the black market; (v) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (vi) time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (vii) expenses and time spent initiating fraud alerts; (viii) decreased credit scores and ratings; (ix) lost work time; (x) lost value of Private Information; (xi) lost value of access to Private Information permitted by PowerSchool; (xii) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; and (xiii) other economic and non-economic harm.

116. As a direct and proximate result of PowerSchool's negligence, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT TWO — NEGLIGENCE PER SE**

117. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

118. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as PowerSchool of failing to use reasonable measures to protect Private Information.

119. The FTC publications and orders also form the basis of PowerSchool's duty.

120. PowerSchool violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards. PowerSchool's conduct was particularly unreasonable given the nature and amount of Private Information it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as PowerSchool, including specifically the damages that would result to Plaintiff and Class Members.

121. PowerSchool's violation of Section 5 of the FTC Act constitutes negligence per se.

122. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

123. The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and to avoid unfair and deceptive practices, caused similar harm as that suffered by Plaintiff and the Class.

124. PowerSchool breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

125. Plaintiff and Class Members were foreseeable victims of PowerSchool's violations of the FTC Act. PowerSchool knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and Class Members.

126. But for PowerSchool's violation of the applicable laws and regulations, Plaintiff's and Class Members' Private Information would not have been accessed by unauthorized parties.

127. As a direct and proximate result of PowerSchool's negligence per se, Plaintiff and Class

Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: (i) ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (ii) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (iii) loss of the value of their privacy and the confidentiality of the stolen Private Information; (iv) illegal sale of the compromised Private Information on the black market; (v) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (vi) time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (vii) expenses and time spent initiating fraud alerts; (viii) decreased credit scores and ratings; (ix) lost work time; (x) lost value of Private Information; (xi) lost value of access to Private Information permitted by PowerSchool; (xii) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; and (xiii) other economic and non-economic harm.

128. As a direct and proximate result of PowerSchool's negligence per se, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT THREE — BREACH OF IMPLIED CONTRACT**

129. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

130. Plaintiff and Class Members entered into an implied contract with PowerSchool when they obtained services from PowerSchool, or otherwise provided Private Information to PowerSchool.

131. As part of these transactions, PowerSchool agreed to safeguard and protect the Private Information of Plaintiff and Class Members and to timely and accurately notify them if their Private Information was breached or compromised.

132. Plaintiff and Class Members entered into the implied contracts with the reasonable

expectation that PowerSchool's data security practices and policies were reasonable and consistent with legal requirements and industry standards. Plaintiff and Class Members believed that PowerSchool would use part of the monies paid to PowerSchool under the implied contracts or the monies obtained from the benefits derived from the Private Information they provided to fund adequate and reasonable data security practices.

133. Plaintiff and Class Members would not have provided and entrusted their Private Information to PowerSchool or would have paid less for PowerSchool products or services in the absence of the implied contract or implied terms between them and PowerSchool. The safeguarding of the Private Information of Plaintiff and Class Members was critical to realize the intent of the parties.

134. Plaintiff and Class Members fully performed their obligations under the implied contracts with PowerSchool.

135. PowerSchool breached its implied contracts with Plaintiff and Class Members to protect their Private Information when it (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) disclosed that information to unauthorized third parties.

136. As a direct and proximate result of PowerSchool's breach of implied contract, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Private Information; illegal sale of the compromised Private Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work

time; lost value of the Private Information; lost value of access to their Private Information permitted by PowerSchool; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of PowerSchool's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

**COUNT FOUR — UNJUST ENRICHMENT**

137. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

138. Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conferred upon, collected by, and maintained by PowerSchool and that was ultimately stolen in the PowerSchool Data Breach.

139. PowerSchool was benefitted by the conferral upon it of the Private Information pertaining to Plaintiff and Class Members and by its ability to retain, use, and profit from that information. PowerSchool understood that it was in fact so benefitted.

140. PowerSchool also understood and appreciated that the Private Information pertaining to Plaintiff and Class Members was private and confidential and that its value depended upon PowerSchool maintaining the privacy and confidentiality of that Private Information.

141. But for PowerSchool's willingness and commitment to maintain its privacy and confidentiality, that Private Information would not have been transferred to and entrusted with PowerSchool.

142. Because of its use of Plaintiff's and Class Members' Private Information, PowerSchool sold more services than it otherwise would have. PowerSchool was unjustly enriched by profiting from the additional services it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

143. PowerSchool also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

144. PowerSchool also benefitted through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' Private Information.

145. It is inequitable for PowerSchool to retain these benefits.

146. As a result of PowerSchool's wrongful conduct as alleged in this Complaint (including among things its failure to employ adequate data security measures, its continued maintenance and use of the Private Information belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the unauthorized disclosure of that Private Information), PowerSchool has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

147. PowerSchool's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain that information secure from unauthorized access by hackers and identity thieves.

148. It is inequitable, unfair, and unjust for PowerSchool to retain these wrongfully obtained benefits. PowerSchool's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

149. The benefit conferred upon, received, and enjoyed by PowerSchool was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for PowerSchool to retain the benefit.

150. PowerSchool's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and

monitor the use of their Private Information and caused the Plaintiff and Class Members other damages as described herein.

151. Plaintiff and the Class Members have no adequate remedy at law.

152. PowerSchool is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on PowerSchool as a result of its wrongful conduct, including specifically: the value to PowerSchool of the Private Information that was stolen in the Data Breach; the profits PowerSchool received and is receiving from the use of that information; the amounts that PowerSchool overcharged Plaintiff and Class Members for use of PowerSchool's products and services; and the amounts that PowerSchool should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

**COUNT FIVE — DECLARATORY JUDGMENT**

153. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

154. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further relief as deemed necessary. The Court has broad authority to restrain acts that are tortious and violate the federal laws and regulations described herein.

155. An actual controversy has arisen in the wake of the Data Breach regarding PowerSchool's present and prospective common law and other duties to reasonably safeguard its customers' Private Information and whether PowerSchool is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff and Class Members continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that future compromises of their Private Information will occur given the publicity around the Data Breach and the nature and quantity of

the Private Information stored by PowerSchool.

156. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

A. PowerSchool continues to owe a legal duty to secure Plaintiff's and Class Members' Private Information and to timely notify consumers of a data breach under the common law and Section 5 of the FTC Act; and

B. PowerSchool continues to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiff's and Class Members' Private Information.

157. The Court also should issue corresponding prospective injunctive relief requiring PowerSchool to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

158. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at PowerSchool. The risk of another such breach is real, immediate, and substantial. If another breach at PowerSchool occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

159. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to PowerSchool if an injunction is issued. Among other things, if another massive data breach occurs at PowerSchool, Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to PowerSchool of complying with an injunction by employing reasonable data security measures is reasonable, and PowerSchool has a pre-existing legal obligation to employ such measures.

160. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by helping to prevent another data breach at PowerSchool,

which would eliminate the additional injuries that would result to Plaintiff and Class Members and the millions of consumers if their confidential information were further compromised.

## VII. PRAYER FOR RELIEF

For these reasons, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, as follows:

1. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

2. That the Court grant permanent injunctive relief to prohibit PowerSchool from continuing to engage in the unlawful acts, omissions, and practices described herein, including:

A. Prohibiting PowerSchool from engaging in the wrongful and unlawful acts described herein;

B. Requiring PowerSchool to protect all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

C. Requiring PowerSchool to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

D. Requiring PowerSchool to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on PowerSchool's systems on a periodic basis, and ordering PowerSchool to promptly correct any problems or issues detected by such third-party security auditors;

E. Requiring PowerSchool to engage independent third-party security auditors and internal personnel to run automated security monitoring;

F. Requiring PowerSchool to audit, test, and train its security personnel regarding any new or modified procedures;

G. Requiring PowerSchool to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

H. Requiring PowerSchool to routinely and continually conduct internal training and education, at least annually, to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

I. Requiring PowerSchool to implement a system of testing to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with PowerSchool's policies, programs and systems for protecting Private Information;

J. Requiring PowerSchool to implement, maintain, regularly review and revise as necessary, a threat management program designed to appropriately monitor PowerSchool's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

K. Requiring PowerSchool to meaningfully educate all Class Members about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

L. Requiring PowerSchool to implement logging and monitoring programs sufficient to track traffic to and from PowerSchool servers; and

M. Appointing a qualified and independent third-party assessor to conduct for a period of 10 years a SOC 2 Type 2 attestation to evaluate on an annual basis PowerSchool's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies in compliance with the Court's final judgment;

3. That the Court award Plaintiff and Class Members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

4. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by PowerSchool as a result of its unlawful acts, omissions, and practices;

5. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

6. That Plaintiff be granted the declaratory relief sought herein;

7. That the Court award Plaintiff the costs and disbursements of this action, along with reasonable attorneys' fees, costs, and expense;

8. That the Court award pre-judgment and post-judgment interest at the maximum legal rate; and

9. That the Court grant all such other relief as it deems just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims so triable.

DATED this 7th day of February, 2025.

KELLER ROHRBACK L.L.P.

By: */s/ Juli E. Farris*

Juli E. Farris (SBN 141716)
Christopher L. Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
jfarris@kellerrohrback.com
cspringer@kellerrohrback.com

Cari Campen Laufenberg (*pro hac vice* to follow)
Andrew Lindsay (*pro hac vice* to follow)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
claufenberg@kellerrohrback.com
alindsay@kellerrohrback.com

*Attorneys for Plaintiff*